513-0079, People v. Cobb. Mr. Whitney. Thank you, Your Honors. Good morning, Your Honors, and may it please the Court, Counsel. There are a number of issues raised in this appeal, but I think they fall into two main categories. First, this case never should have gone to trial at all because Mr. Cobb was not given a required Miranda warning before making incriminating statements in response to a police interrogation. Second, when he did go to trial, he didn't receive a fair warning. The jury was allowed to hear emotionally charged and unfairly prejudicial other crimes' evidence of marginal relevance, was allowed to hear the prosecutor during the rebuttal argument improperly comment on Mr. Cobb's failure to call a witness, whose availability to either side is unknown, and then in short order, it then heard the Court approve these comments, thus insinuating that Mr. Cobb was required to prove his innocence, and on top of all that, after telling the jury that he was going to be instructed and asked for the law, the Court then failed to cure that very error by failing to give it IPI Criminal Instruction 2.03 regarding the core principles of American criminal jurisprudence, the presumption of innocence, the state's burden of proof, and the absence of any requirements of the accused to prove anything. So considering the totality of these circumstances or cumulative error, there is no way this trial could be regarded as fair. Accordingly, Mr. Cobb is here today to respectfully request that the Court reverse his conviction, vacate his sentence, and remand this clause for a new and fair trial. With respect to the fair trial issue, Your Honor, or the cumulative error issue on that, I think the centerpiece here has to be the failure to give that cardinal instruction of American criminal jurisprudence 2.03. Now, we realize, of course, that the failure to give that instruction is not necessarily reversible error if there are certain compensating factors that occur during the trial, as was the case in the Supreme Court cases of People v. Langview and People v. Casillas. However, none of those compensating factors played a prominent role in this case. And in addition to that, there were aggravating factors that compounded the failure to give this instruction, as was the case in People v. Davis, where the appellate court ruled that this was still a reversible error if they were to give that instruction. And I don't know if the Court has seen the reply brief, but I actually reproduced a chart on page 14 of the reply brief comparing all four of these cases, including the instant case, on both the compensating and aggravating factors. And when you look at that, I think it's very clear that this case, if anything, is even worse than Davis in reviewing all these factors, and certainly not very close to the Langview and Casillas cases. In that regard, the compensating factors we don't have here are the discussion during or prior to voir dire of the presumption of innocence in the state's burden of proof. In this case, Judge Speroni did do what he was required to do during the voir dire, but you don't have the extensive discussion or the discussion at length and repeatedly that you have in the Langview and Casillas cases during the voir dire, reminding the jury over and over again that the defendant doesn't have to prove anything. He's presumed innocent unless the state proves its case beyond a reasonable doubt. In the Langview and Casillas cases, the court then reminded the jurors of these cardinal principles after the voir dire, but before closing argument. That didn't happen in this case, nor in the Davis case. In the case that Barr, and I think this is a really critical one, the defendant didn't testify. He was relying on the state's burden of proof, the presumption of innocence. That was largely his defense. The only thing the defendant in this case did was he presented one exhibit. That was his entire case, basically to show what time the sun set on January 23rd, to call into question the witness's ability to observe correctly when it was after dark. And then finally, what you had in this case that I think makes it even worse than the Davis case is you have the state commenting about the defendant's failure to call a witness, counsel objecting that the defendant was not required to prove his case, and then he's overruled by the court. Is that what counsel said at the time? Objection, we don't have to present any evidence. Yes, exactly. He made that objection twice. The court overruled him twice. And if you think of it, this is where it really gets into this cumulative error issue, is if you look at it from the point of view of the jury, they hear this, oh, they must be thinking, well, he doesn't, I guess it's okay for the state to comment about his failure to produce a witness. I guess it must be wrong that the defendant doesn't have to prove his case. And then literally minutes after that, the court is telling him, I'm the one that's going to instruct you on the law, and then he doesn't give them this curative instruction reminding them, 2.03 of these cardinal principles, no, he doesn't have to prove anything. He doesn't have to put out any evidence. It's the state that must carry its burden of proof beyond a reasonable doubt. So when you look at this, the totality of circumstances, this combination of factors, I think it's very clear that this is similar to what happened in People v. Blue, the Illinois Supreme Court case, where the court ruled that even where the evidence of a defendant's guilt is overwhelming, which I'm not conceding here, but even where it is, a combination of serious errors may necessitate reversal in a new trial in order to preserve the trustworthiness and reputation of the judicial process. And I think given the magnitude of these errors, and then the error that occurred previously in addition to all that, where the state was allowed to present evidence of other crimes, basically what happened is that after Mr. Cotton had been arrested for driving under the influence, put in the back of the squad car, he goes holistic, starts cursing at the officer and threatens to kill him and so on and so forth. Well, that's other crimes evidence. And as a matter of fact, he was charged separately for that other crime. That wasn't brought up, though, was it? That there was a charge pending? It was in the record, Your Honor. I think defense counsel at the trial level didn't call that to the court's attention. No, but as far as the words were said, I mean, the activity that occurred was said. But was it also included that there was a separate pending charge? In front of the jury. No, not in front of the jury. No, but the court was aware of it. No, no, I understand. But the jury was only told about the words. Correct. That is correct. Let me ask you another question about that. Was any kind of instruction, limiting instruction given to the jury? You can only consider this on the issue of whether he was intoxicated. No, I'm not aware of any limiting instruction. The defense counsel asked for a limiting instruction. In other words, this was allowed only for a limited purpose. Right. Defense counsel filed a motion eliminating, trying to bar this, and it was overruled. And so that's how it came in. And the court said, though, I'm only going to allow you to put in this evidence about him threatening to kill the officer and so forth on the issue of his intoxication. Right. And a minor correction, the court did say, well, I'm granting the motion to eliminate insofar as to not allow comment that this was the subject of another charge, which answers Your Honor's question. But this was clearly error in this case because it was evidence of other crimes. And in order for evidence of other crimes to be admitted, it has to have a threshold similarity to the crime charged. There's no threshold similarity between driving under the influence and threatening to kill a police officer or making threats against a police officer. So for that reason alone, this rises to the level of plain error. It also, I think, is reversible error. Why do you think that it's error if only the state talks about reasonable doubt? In other words, if the defense lawyer in his opening or in his question of the veneerment doesn't ask about reasonable doubt, why is that error? Do you understand my question? You've raised error that the court used its discretion in permitting the state to talk about reasonable doubt, but then you're saying the defense didn't do it. Well, there may be a multitude of reasons why they didn't do it. Well, that was actually another category of error that I'm referring to there, and that's where the state, and frankly, were it not for the other errors that occurred in this case by itself, that would probably not rise to the level of being reversible error. Okay. Finish your thought. Yeah, but what we're referring to there is that the jury court here, the state, actually gave kind of a negative definition of reasonable doubt, saying, well, it's not all doubt. I contend that, following the rule strictly, that was error, but that really doesn't go to the whole 2.03 issue that I'm raising. It's kind of a separate category of error. Okay. You don't have a chance again. Thank you. Okay. Mr. Daley. Good morning, Your Honors. May it please the Court. Mr. Whitley. I'm going to go kind of in reverse order to address some of the questions that Justice Esterwood and Kate's asked, and then we'll jump back to where we started. With regards to, there's been talk about the laptop of other crimes evidence, limiting instructions, et cetera, et cetera. I can kind of understand that conceptually, because I think as lawyers we all understand that threatening a public officer or a public official constitutes a particular felony, and therefore it's a crime. It's not, however, manifestly apparent to a jury that that's a crime. To threaten to kill a police officer? We don't know. They don't, I mean, if you present other crimes evidence of dealing drugs, if you present other crimes evidence of hitting someone in the face and knocking them unconscious, I think a reasonable jury could say, ah, that's dealing drugs, that's bad. Now, I'm not saying this necessarily as completely resolving the issue, but I do think it factors into when we consider the circumstances in which this evidence was presented, that it's not necessarily presented for the purposes of other crimes evidence. However, if we want to call it other crimes evidence, other crimes evidence is nonetheless admissible, provided it's being introduced for a purpose other than to show the defendant's propensity to commit a crime. Now, there was no instruction given. And none was requested, I take it. I mean, defense counsel could have, I mean, that may be trial strategy, maybe not. Maybe you don't want to draw more attention to it, but defense counsel could have said, judge, if this is going to be introduced for this limited purpose, please instruct the jury that it's only being admitted for that purpose. And then, of course, at the end, the limited purpose instruction. And when you have clearly identifiable other crimes evidence, that certainly should be out. When you look at this case historically, this issue was brought before the court, and the court gave very careful consideration to this particular type of evidence, knowing that it has, obviously, an unfair prejudice potential. Having heard the arguments from both sides of the court, I think, came to a reasonable accommodation, because the court understood correctly that the defendant's behavior was relevant for purposes of the state establishing the defendant's erratic behavior in conjunction with or as proof of or corroborative of the allegation the defendant was intoxicated. However, instructing the jury that it's charged with threatening an officer has with it, obviously, on its face a particular prejudice. It's really immaterial to the proof of the charge in this case. So, again, when we're talking about from an abuse of discretion standpoint, of course, we have to be able to say definitively that the judge's ruling was arbitrary, fanciful, or no other person would have come to the same conclusion. I don't think that you can make that determination here. Now, I do want to add one thing to that. When we talk about limited instruction, if you look at how the evidence was characterized and discussed by the prosecutor in the closing argument, it was argued strictly in the context of, look at what this defendant did. It shows that he's just not acting rationally because he was intoxicated. So the proof was not to show that the defendant was a bad guy, that he committed a crime, but for the very purpose that the judge allowed it, which is to establish the fact that a non-intoxicated person would not act in such an irrational behavior but for. So I think that when you look at the totality of the circumstances in that regard, you can see that the court's ruling was correct and the defendant was not unfairly prejudiced by the admission of that evidence. With regard to Justice Kate's question in regards to discussing the reasonable doubt instruction with the jury, and that's an issue the defendant raised here, the defendant's argument is actually correct to some extent. There is a Supreme Court rule which says that you cannot question a jury about matters that relate to what are even jury instructions, and obviously the reasonable doubt instruction is or should have been an instruction in this case. So I think that the fundamental of the argument sort of works on both ways. I mean, I don't think a prosecutor can indoctrinate a jury on jury instructions. I don't think a defense attorney can indoctrinate a jury on jury instructions. No. Not all the time. But they're not – I see lots of things done all the time. But only for the purpose of jurors saying they'll follow. And that's really where we're – And that they'll be fair. And that's really where we're getting to here is essentially there's nothing incorrect that is being told to the jury, whether it should have been done or not. And the Supreme Court observed in a really old case, as I say, that it's not good practice, but it's not necessarily something that constitutes reversible error and should be avoided. So I think that although the defendant's argument has sort of structural correctness to it, I think fundamentally I don't see how the jury was negatively impacted, whether the state had done this or whether the defense counsel had said, you know, beyond reasonable doubt is more than, you know, something or another. I mean, you reach into dangerous territory and you start to quantify things. But the prosecutor's statements were, based upon existing case law, correct. And so I don't believe that that, no matter if it violates the rule or not, is really adequate to constitute reversible error. I am troubled by the absence of the Republic of Instruction 2.03, and this is an issue that I'm seeing pop up more and more often. I'm not really sure why. Do you agree that it's error or not to give the instruction? It's certainly error. Okay. So the error is really the issue before this Court, given the fact that the issue is not properly preserved, is whether it rises to claim error. Defendants did really a pretty good job, I think, in replying to sort of kind of laying this thing out. I think that, however, the problem with that is that there's really nothing in the case law which essentially says we're going to bungle this issue into, well, you have this and you don't have this, you have this and you don't have that, and therefore, you know, it becomes very mathematical. And that's not what the Leahy report said. The Leahy report was pretty explicit that in its assessment of whether the defendant's denied a fair trial, it really becomes an issue of the totality of circumstances and whether a reviewing court can satisfy itself factually that notwithstanding the absence of this instruction, that the jury was adequately apprised of the principles involved, which are obviously proof beyond reasonable doubt and the State's burden of proof. In this case, yes, ma'am. Mr. Daley, we just discussed the fact that the attorney, the only attorney who spoke to Banneerman about this was the State, right? Are we going back to this issue? Well, when you talk about cumulative error, now we have the instruction not being given. The other case law seems to look at what was the judge doing during the trial, before the trial, what were the lawyers doing at the Banneerman's. I understand. We don't have that in this case. Well, what we have in this case is this. Now, the jury was given collectively specific instructions about the burden of proof and about the reasonable doubt. Collectively. Well, when you have a jury trial, as your honors obviously are well familiar with, when the veneer panels are brought in, they're given sort of base instructions. Right, they're given the general instructions. Correct. Which out of 40 lines has maybe one. Well, a little bit more than that. But it's pretty explicit in the record. However, there's also the, I think it's zero, I think is the case, instructions where, or admonishments where each individual juror is then separately questioned about these principles with the goal of ascertaining that they understand and are going to follow those legal principles. And that's what happened in this case. That's not what happened in the Casillas case, that the defendant cites in the debrief. Also in this case, which is not in the Alayu case, was that the evidence was overwhelming. Now, obviously the defense counsel and I disagree on this, but the bottom line is you have a case where the defendant was positively identified by a witness as driving the vehicle. It was identified by the police officer who was exiting the driver's side of the vehicle when he arrived at the scene. And I think proof of the defendant's intoxication, assuming this court finds that the admission of his 50 beers and he was drunk on top of everything else, is part of the matrix of facts, if you will, clearly overwhelmingly establishes that he was committing it. And Alayu acknowledges that the evidence in that case was not overwhelming, yet nonetheless found on the basis of a lot of the same factors which we're relying upon here, that the jury was nonetheless still adequately advised of it. The jury did receive the elements of instruction, which Leahy cited as one of those things where a jury is, again, given these principles and involved with the reasonable doubt standard. What we don't have- What about then the shifting of the burden of proof? Do you believe that that was something that occurred during closing? This is the- No. You don't believe that the statements by the prosecutor- Well, when we have to- Okay. It would be error for the prosecutor to sort of baldly come in at the closing argument. This happened in Buffalo. You should know. But baldly state at some point during closing arguments that the defendant should have presented such and such evidence or should have presented such and such evidence. You know, in isolation is essentially the truth. It's telling the defendant you have the obligation to present evidence. That's an obvious thing to hear, to comment on the defendant's silence and things of that nature. And that all sort of falls within the same Fifth Amendment context. But in this case, the defendant was the one who specifically- If I could just finish this thought real quickly since I'm here in Buffalo. It was the defendant who was specifically introduced into this evidence. In this case, there was a question of the officer. The defendant's statements- The passenger of the vehicle that was the actual driver in this case. Now, that came out in evidence. And then during closing argument, although defense counsel carefully, in my opinion, didn't exactly say he was the driver, he made repeated comments that the state's burden to prove who the driver was. And that doesn't leave a lot to the imagination who that other person would have to be. So, in effect, the defendant starts the whole thing by basically placing it on the state's shoulders. The burden of disproving that the other person was the driver had done it. That was the defense. So, in rebel, the state says, so you don't think that if Mr. Walters was driving, he wouldn't come in here for his friend and say, no, it was me driving? Once the defendant throws that into it, it's no longer just a count out of the blue without context. But the defendant putting it on the state's shoulders of their provenance. Their burden of proof. The state does have the burden of proof. The state does have the burden of proof. I mean, everything the defendant said about that is right. They had the burden of proving that he drove. He does. But the defendant doesn't have the right necessarily. I want to say right. The defendant has the right to make an argument that the state should show that it wasn't so-and-so driving. And the defendant can introduce this evidence. But once you do that, then it's the defense, as this Williams case points out, you've put your particular defense at issue for the jury and its credibility. And it's appropriate to comment upon the absence of presentation of evidence to prove that up. And that's Williams. Okay. Thank you very much. I'm sorry. I'm not trying to get all. No, that's fine. I get very excited sometimes. That's good. Good. Okay. Your bottle. Thank you, Your Honor. Continuing the excitement. What do you think, Mr. Whitney, about his comment that you started it, the defense started it, and so when the state came in and said, you don't think he would have come in? In other words, my question is, did the defendant really say enough that would have allowed the state to make that kind of comment? No, he did not, Your Honor. Defense counsel did not. Defense counsel simply made the innocuous comment that someone else was there and that it was the state's case to prove the defendant was driving the vehicle. That was the sum total of it. That was a very innocuous comment, and it actually goes back to the central issue in this case, which is, as Justice Stewart pointed out, that he's really commenting on the state's failure to carry its burden. That's all. In addition, and I didn't bring this up on my earlier oral argument, there was another rule that was broken here. First of all, the default rule is it's improper to comment on a defendant's failure to call a non-alibi witness. But even if this court decides, well, maybe he opened the door to it, to allow comment, it must be clear that the witness was readily accessible to the defendant and not equally accessible to the prosecution. And that's the Wills case that I cited in our brief. That didn't happen here. We have no idea on this record whether this Mr. Waters was accessible to either side. And for the state to come in despite that and even make the allegation with nothing behind it that, well, this was Mr. Kopp's friend during the rebuttal argument, that makes it even more improper. We don't know if he's his friend. We don't know if he was in the state of Illinois at the time of this trial. He might have been overseas for all we know. We have no record here. For that reason alone, this was improper. But what about the plain error argument? Your Honor, first of all, with respect to the failure to give 2.03, if you look at the Supreme Court, in the Casillas case, commenting on the prior Lakeview case, it states, and this is at pages 473 and 474 of the official reporter, just talking about it, it says that the state's burden of proving defendant beyond a reasonable doubt is a time-honored and effective method of protecting the defendant's right to a fair trial guaranteed by the due process clause. Thus, despite the defendant's failure to object, this Court will notice the error and endeavor to determine whether the defendant was denied a fair trial by the Court's failure to sua sponte give IPI criminal 2.03. Clearly, I think it comes under the structural error. That's basically what the Court's saying here. It's clearly the plain error. It was a plain error in Lakeview. It was a plain error in Casillas. It's a plain error here. In addition — So you don't have to meet the first prong that that's a closed case. Correct. This comes under the other prong for plain error, that it's a clear, obvious — it's so serious that it affected the fairness of the defendant's trial. In addition, I cite in our — I think in the reply brief the Miller case by the appellate court in 2013 that talks about how cumulative error merits review under the plain error doctrine where the combined impact of the error denies defendant a fair trial, which, of course, is the main thing we're emphasizing here. So I think this is clearly reviewable under the plain error doctrine. Also, counsel mentioned that with respect to the other crimes evidence, that that's reviewed for abuse of discretion. I would call this Court's attention to the fact that the other errors, the failure to give the jury instruction and the error made in closing our rebuttal argument, the improper commentary, those are reviewed enough. This Court gets to look at it as if it were the trial court, and I think for the reasons stated in our brief, it should come to a different conclusion. Finally, with respect to the argument about the other crimes evidence and what the jury would or would not know, I'd point out that it's not simply that there was no threshold similarity to the other crime charge. This was the prejudicial impact of this clearly outweighed the probative value. Mr. Cobb never contested that he was intoxicated. The officer at the time already knew he was intoxicated. He had already arrested him for it based on his conduct and in statements that he made that we say should have been barred for the failure to give the grand warning. Thank you for your consideration, Your Honor. You're welcome. Okay, we'll take this case under advisement and a dispositional issue in due course. Thank you.